UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

-----------------------------------------------------------------------------------------------------

| | |
|---|---|
| Wilzaylan Brito Solis, | D. Minn. Case No. 0:23-mc-97 |
| Plaintiff, | M.D. Fla. Case No. No. 5:23-cv-000208-JSM-PRL |
| v. | |
| American Express National Bank; et al.; | |
| Defendants. | |

---

**DEFENDANT TD BANK USA, N.A., AND
NONPARTY TARGET ENTERPRISE SERVICES, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO QUASH SUBPOENAS**

---

Defendant TD Bank USA, N.A., and its nonparty credit-card servicer

Target Enterprise Services, Inc., have moved this Court under Rule 45(d)(3) for

an order quashing Mr. Solis's subpoenas to Target. TD and Target respectfully

submit this memorandum of law in support of their motion.

# Contents

Facts ........................................................................................................................ 3

Legal Standard ...................................................................................................... 6

Argument ............................................................................................................... 6

I.   The subpoenas and the duplicative discovery subject Target to undue
     burden. ........................................................................................................... 8

II.  Target and TD have repeatedly tried to accommodate Mr. Solis's attorney's
     demands, to no avail. ..................................................................................... 9

III. Mr. Solis's attorney agreed to forgo a separate deposition from Target, but
     now refuses to honor that agreement. ......................................................... 12

IV.  Mr. Solis's organizational-deposition subpoena fails to allow a reasonable
     time to comply because, as his attorney knows, Target's witness has been
     out of the country. ........................................................................................ 14

Conclusion ........................................................................................................... 15

**Facts**

This action concerns a claim that TD violated the Fair Credit Reporting Act by failing to properly investigate his identity-theft claim and by failing to delete inaccurate information from his consumer report. (*See* 2d Am. Compl. [ECF Doc. 74], ¶ 6 at 3; *id.*, ¶¶ 78–94 at 15–18; *id.*, ¶¶ 119–28 at 22–24; *id.*, ¶¶ 151–60 at 28–29; *id.*, ¶ 299 at 74.)

TD issues, and its credit-card servicer Target services, the Target-branded credit card that is the subject of Mr. Solis's claim against TD. As TD's credit-card servicer, Target handles all cardholder-facing activity: sending monthly billing statements, handling customer-services calls and correspondence, maintaining account records, investigating and responding to credit-reporting disputes, and managing any account-related litigation, among other things. (*See* TD's Answers Interrogs. [Ex. B], Answer No. 3 at 5 ("TD's servicer Target sent a monthly update about Mr. Solis's account to the consumer reporting agencies . . . ."); *id.*, Answer No. 7 at 8 ("TD's servicer Target's guidelines for credit-reporting disputes"); *id.*, Answer No. 16[a] at 14 ("For each dispute of which TD receives notice from a consumer reporting agency, TD's servicer Target conducts an investigation with respect to the disputed information . . . ."); *id.* at 16 ("TD's

servicer Target mailed each monthly billing statement for the subject account . . . .").)

TD has been transparent throughout discovery that Target was the source of its documents and facts, and that its responses were on both its and Targrt's behalf. TD's initial disclosure stated that "TD's information about the subject account and claims is corporate information based on its servicer [Target's] records," (Initial Discl. [Ex. A] at 1), and that it was Target that "has records relating to the subject Target-branded credit-card account," including the 234 pages from Target's records that TD provided with the initial discourse, (*id.* at 2). TD's answers to interrogatories stated that, whenever the answers used the term "TD," "'TD' means Defendant TD Bank USA, N.A., and includes its credit-card servicer [Target]." (TD's Answers Pl.'s Interrogs. [Ex B] at 1.) TD's first interrogatory answer's first sentence said that "[t]he information that TD is furnishing in these answers is corporate information based on its servicer Target's records." (*Id.*, Answer No. 1 at 3.) TD's response to Mr. Solis's request for production likewise stated that "'TD' . . . includes its credit-card servicer Target Enterprise, Inc.," (TD's Resp. Pl.'s Req. Produc'n [Ex. C] at 1) — so that when TD responded that "TD will produce copies of the requested documents or

4

electronically stored information," it was clear that TD's production would include any responsive documents and electronically stored information in Target's possession, custody, or control. Target participated fully in TD's discovery responses, and TD's interrogatory answers were signed by Target on TD's behalf. (Target's Answers Pl.'s Interrogs. [Ex. B] at 23.)

On September 22, 2023, more than two months after Target served its discovery responses, Mr. Solis served a Notice of Intent to Serve Subpoena Duces Tecum with Deposition, a cover letter from Mr. Solis's attorney, and a Subpoena to Testify at a Deposition in a Civil Action with an Attachment A titled "30(b)(6) Notice of Deposition of Target Financial & Retail Services."[1] The request for documents[2] largely duplicated the categories in the Plaintiff's First Set of

---

[1]"Target Financial & Retail Services" is the former name of the operating division that services the Target-branded credit cards that TD issues. The operation division is now known as Target Enterprise Services. The servicer's legal name is Target Enterprise Services, Inc.

[2]Mr. Solis does not appear to have served an actual subpoena commanding the production of documents. The Notice of Intent to Serve Subpoena Duces Tecum says that "[t]he documents subpoenaed are identified in Exhibit A hereto. are no documents requested [*sic*]." (Notice of Intent [Ex. D] at 1.) The Notice of Intent does not include an Exhibit A, although there are two pages following the Notice's signature block that appear to be an unnumbered list of categories of documents. The subpoena refers only to a deposition, does not mention production of documents, and leaves unchecked the box that would indicate a

Production Requests to Defendant TD Bank USA, N.A. (June 8, 2023), to which

TD fully responded in July 2023, (*see* TD's Resp. Pl.'s Req. Produc'n [Ex. C]).

## Legal Standard

Rule 45 provides that "[o]n timely motion, the court for the district where

compliance is required must quash or modify a subpoena that: (i) fails to allow a

reasonable time to comply; . . . or (iv) subjects a person to undue burden." Fed. R.

Civ. P. 45(d)(3)(A).

The rule also provides that

> A party or attorney responsible for issuing and serving a
> subpoena must take reasonable steps to avoid imposing undue
> burden or expense on a person subject to the subpoena. The court
> for the district where compliance is required must enforce this duty
> and impose an appropriate sanction—which may include lost
> earnings and reasonable attorney's fees—on a party or attorney who
> fails to comply.

Fed. R. Civ. P. 45(d)(1) (avoiding undue burden or expense; sanctions).

## Argument

Target and TD generally do not object to the discovery that Mr. Solis is

seeking. But they do object to Mr. Solis seeking and obtaining the discovery from

---

command for production. (Subpoena [Ex. E].) But in an abundance of caution,
TD and Target did serve objections under Rule 45(d)(2)(B). (*See* Letter from
Melendez to Teran (10/9/23) [Ex. G].)

TD, then seeking *the same discovery* separately from Target — or vice versa. The organizational deposition that Mr. Solis's subpoena seeks from Target will presumably be followed by a notice of another organizational deposition from TD itself. Mr. Solis should not be able to deploy a subpoena against Target, pretending that Target is a stranger to this litigation, in order to get two bites at the apple.

Mr. Solis's attorney Santiago J Teran did tell TD's and Target's attorney Brian Melendez in late September that "[i]f Target and TD will produce the same representative on behalf of both TD and Target, then we can also obviate the deposition under subpoena." (Email from Teran to Melendez [Ex. F] at 4 (9/28/23).) Mr. Melendez wrote back that the same witness could testify for both. (Email from Melendez to Teran [Ex. F] at 3 (10/3/23).) But when Mr. Melendez followed up about scheduling the deposition, (Email from Melendez to Teran [Ex. F] at 3 (10/9/23)), Mr. Teran insisted that he would proceed with Target's deposition under subpoena. (Email from Teran to Melendez [Ex. F] at 1 (10/9/23).)

I.   **The subpoenas and the duplicative discovery subject Target to undue burden.**

The duplicative request for documents subjects Target as a nonparty to an undue burden. Target already participated in TD's responses to Mr. Solis's discovery requests. Since Target is TD's servicer, Target and TD are in privity, and any relevant document or other information in Target's possession, custody, or control is also in TD's control. There is no relevant document or other information that Mr. Solis can get from Target that he can't get by asking TD directly.

Likewise, since Target and TD have already said that they would designate the same organizational witness for a deposition under Rule 30(b)(6), (Email from Melendez to Teran [Ex. F] at 3 (10/3/23); *see also* Email from Melendez to Teran [Ex. F] at 5 (9/25/23)), it makes no sense for Mr. Solis to force Target to testify separately while leaving the door open for another, later organizational deposition from TD — especially when the both organizations will designate the same organizational witness. Again, Target and TD do not object to the deposition being taken[3] — but there should be one deposition, not two. Mr.

---

[3]TD and Target do object to a few matters on which Mr. Solis has requested examination but, because Target has not actually been served, as far as

8

Teran originally agreed to that approach, (Email from Teran to Melendez [Ex. F] at 4 (9/28/23)), but then insisted that he would proceed with Target's deposition under subpoena, (Email from Teran to Melendez [Ex. F] at 3 (10/3/23); Email from Teran to Melendez [Ex. F] at 2 (10/3/23); Email from Teran to Melendez [Ex. F] at 1 (10/9/23)).

Target keeps the account records, and TD does not — but since Target is TD's servicer, everything in Target's possession, custody, or control is also in TD's control. So when Mr. Solis served discovery requests on TD, TD's responses included everything that he could have gotten from Target. Asking for the information a second time from Target doesn't gain for Mr. Solis anything that he didn't already get when he asked for it from TD, but it does duplicate the effort necessary for a response.

## II. Target and TD have repeatedly tried to accommodate Mr. Solis's attorney's demands, to no avail.

Target and TD have repeatedly tried to accommodate Mr. Teran's demands, to no avail:

---

it knows, there has been no opportunity for "the serving party and the organization [to] confer in good faith about the matters for examination" as Rule 30(b)(6) requires.

Mr. Teran's first exchange with Mr. Melendez was when Mr. Teran wrote that "[o]ur process server attempted to serve the Target entity as you identified on your initial disclosure statement. Service was rejected at that location. Please advise you can accept service on behalf of Target." (Email from Teran to Melendez [Ex. F] at 6 (9/25/23).) Mr. Melendez wrote back that

> The address in TD's initial disclosure was the office building where the researcher works, not the company's address for service of process.
> Sherilee, Autumn, and I represent both TD Bank USA, N.A., the named Defendant, and its credit-card servicer Target Enterprise Services, Inc. (formerly Target Enterprise, Inc.). So yes, I can accept service on behalf of Target Enterprise Services, Inc. But that approach makes little sense to me, so I'm writing to explain why and to suggest a different approach.

(Email from Melendez to Teran [Ex. F] at 5 (9/25/23).) But even though Mr. Melendez had agreed to accept service, Mr. Teran told Mr. Melendez a week later that "the process server proceeded with service." (Email from Teran to Melendez [Ex. F] at 4 (10/3/23).)[4]

---

[4]Target and TD do not know whether the subpoena has actually been served. The only indication of service that they have received is Mr. Teran's statement in an email that "the process server proceeded with service despite our request to wait until we heard back from you." (Email from Teran to Melendez [Ex. F] at 4 (10/3/23).) But when Mr. Melendez asked Mr. Teran to confirm that the subpoena was served, (Email from Melendez to Teran [Ex. F] at 1 (10/9/23)),

After Mr. Melendez had made the case that Mr. Solis should be seeking discovery directly from TD rather than from Target, (Email from Melendez to Teran [Ex. F] at 5 (9/25/23)), Mr. Teran wrote that "[i]f TD amends its responses to state on the record what you're stating on your email, I have no issues with the document production," evidently based on his mistaken belief that "TD responses to discovery make it very clear that the entities are separate and that TD was passing the blame to Target," (Email from Teran to Melendez [Ex. F] at 4 (9/28/23)). Mr. Melendez responded:

> You wrote that "TD responses to discovery make it very clear that the entities are separate and that TD was passing the blame to Target." I don't understand how you are reaching that conclusion, which is mistaken. TD and Target are in privity, and TD is vicariously liable for Target's conduct as TD's servicer, so there would be no point in "TD . . . passing the blame to Target." I am representing both TD and Target, and their views are entirely aligned in TD's defense.
>
> You also wrote that "If TD amends its responses to state on the record what you're stating on your email, I have no issues with the document production." Again, I suspect that you are misreading TD's responses, so I'm not sure what you think needs to be amended. We have no problem with putting what I wrote in my email last week in a declaration or a discovery response. But TD's discovery responses already say that "'TD' means Defendant TD Bank USA, N.A., and includes its credit-card servicer Target

---

Mr. Teran ignored the question and responded only that "we will proceed with the deposition," (Email from Teran to Melendez [Ex. F] at 1 (10/9/23)).

Enterprise, Inc.," which is essentially the point that I have been
trying to make.

    As I wrote last week, "when you served discovery requests on
TD, TD's responses included everything that you could have gotten
from Target."

(Email from Melendez to Teran [Ex. F] at 3 (10/3/23).) But even though Mr.

Melendez had responded that "[w]e have no problem with putting what I wrote

in my email last week in a declaration or a discovery response," (*id.*), Mr. Teran

never responded and dropped the issue entirely.


III.   **Mr. Solis's attorney agreed to forgo a separate deposition from Target,
       but now refuses to honor that agreement.**

    Most importantly, Mr. Teran agreed to forgo a separate deposition from

Target, but now refuses to honor that agreement. Mr. Melendez had written that

"a deposition from Target would be the same deposition that you would get

from TD, almost certainly with the same witness — the researcher, Sue Wolf."

(Email from Melendez to Teran [Ex. F] at 5 (9/25/23).) Mr. Teran wrote that "[i]f

Target and TD will produce the same representative on behalf of both TD and

Target, then we can also obviate the deposition under subpoena." (Email from

Teran to Melendez [Ex. F] at 4 (9/28/23).) Mr. Melendez confirmed that "it is the

case that 'the same witness can testify as to TD and Target.'" (Email from Melendez to Teran [Ex. F] at 3 (10/3/23).)

But without any explanation, Mr. Teran responded that "[u]nfortunately, this is going in circles. I will proceed per our subpoena on Target, both as to documents and the deposition." (Email from Teran to Melendez [Ex. F] at 2 (10/3/23).) Mr. Melendez followed up by reminding Mr. Teran of his earlier agreement:

> You wrote on the 28th that "If Target and TD will produce the same representative on behalf of both TD and Target, then we can also obviate the deposition under subpoena." I wrote back on Tuesday the 3rd that the same witness can testify for both. The witness will be Susan L. Wolf, who has been out of the country for the past three weeks, but who returns to the office either today or tomorrow. I will check on her availability for a deposition later this month and let you know.

(Email from Melendez to Teran [Ex. F] at 1–2 (10/9/23).) Mr. Teran wrote back only that "I had already written that we will proceed with the deposition given your answers," (Email from Teran to Melendez [Ex. F] at 1 (10/9/23)) — thus insisting on a deposition two days later, and necessitating this motion.

IV.   **Mr. Solis's organizational-deposition subpoena fails to allow a reasonable time to comply because, as his attorney knows, Target's witness has been out of the country.**

Finally, Mr. Teran has insisted on proceeding with Target's deposition under subpoena on Wednesday, October 11, 2023, even though he has known for weeks that Target's witness has been out of the country. Mr. Melendez wrote to him on September 25, in their first exchange about the subpoena:

> Asking for the information a second time from Target doesn't gain you anything that you didn't already get when you asked for it from TD, but it does duplicate both your effort and mine — which is why that approach didn't make sense to me. Likewise, a deposition from Target would be the same deposition that you would get from TD, almost certainly with the same witness — the researcher, Sue Wolf.
>
> Going through Target just adds an unnecessary layer to the process. I therefore ask that you withdraw the subpoena, and just ask for what you need directly from TD. If you'd like a deposition, then I can get it set up; Sue Wolf is on vacation out of the country this week and next, though, so I won't be able to visit with her about scheduling until she is back in the office the week of Monday the 9th.

(Email from Melendez to Teran [Ex. F] at 5 (9/25/23).) Mr. Teran has never offered to proceed on any date other than October 11, a date that he unilaterally chose. And on Monday, October 9, Ms. Wolf's first day back after three weeks abroad, Mr. Teran insisted on proceeding on Wednesday, October 11.

**Conclusion**

The rules of civil procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1 (scope and purpose). Mr. Solis's subpoenas and the duplicative discovery frustrate that purpose, and subject Target to undue burden. Target and TD have repeatedly tried to accommodate Mr. Solis's attorney's demands, to no avail. Mr. Solis's attorney agreed to forgo a separate deposition from Target, but now refuses to honor that agreement. Mr. Solis's organizational-deposition subpoena fails to allow a reasonable time to comply because, as his attorney knows, Target's witness has been out of the country.

Target and TD therefore seek an order under Rule 45(d)(3) quashing Mr. Solis's subpoenas to Target. Target and TD also seek their attorney's fees in connection with this motion.

October 10, 2023.

BARNES & THORNBURG LLP

/s/ Brian Melendez

_____

Brian Melendez, No. 0223633
Autumn C. Gear, No. 0398236
Suite 2800
225 South Sixth Street
Minneapolis, MN 55402-4662
Ph. 612.367.8734
Fax 612.333.6798
brian.melendez@btlaw.com

Attorneys for Defendant
    TD Bank USA, N.A., and
    its nonparty credit-card servicer
    Target Enterprise Services, Inc.